IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03452-CMA-CBS

AKEEM MAKEEN,

       Plaintiff,

v.

STATE OF COLORADO,
DENVER CITY AND COUNTY,

       Defendants.

---

## RECOMMENDATION REGARDING PENDING MOTIONS FOR INJUNCTIVE RELIEF

---

Magistrate Judge Shaffer

      THIS MATTER comes before the court on *pro se* Plaintiff Akeem Makeen's Corrected Verified Petition and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #60) and Mr. Makeen's Verified Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #103). The former motion seeks an order "requiring Defendants State of Colorado and Denver City and County to enforce the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, Colorado Anti-Discrimination Act ("CADA"), and C.R.S. § 13-90-201" by requiring "Defendants to appoint Ms. Leta Holden to serve as his note taker at every court hearing and . . . to compensate her at the rate of $300.00 an hour." The more recently filed motion for temporary injunctive relief asks the court to "direct [the] City to retain a competent attorney or other competent person to be Mr.

1

Makeen['s] note taker."

Plaintiff's pursuit of preliminary injunctive relief has been persistent.  Mr. Makeen filed a Verified Petition and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #24) on February 2, 2015.  Defendant State of Colorado, as well as former Defendants Janel Bravo and Charla Branham (heretofore referred to as the "State Defendants"),[1] filed a Brief in Opposition (doc. #30) on February 23, 2015.  That same day, Defendant Arapahoe County filed a separate Brief in Opposition (doc. #31).  Mr. Makeen then filed a Reply to State Defendants' Brief in Opposition (doc. #36) on February 26, 2015, as well as a Supplemental Brief in Support of Plaintiff's Verified Petition and Application (doc. #51) on March 18, 2015.  The latter submission prompted the State Defendants to file a Response to Plaintiff's Supplemental Brief (doc. # 61) on March 30, 2015.  Mr. Makeen then filed a Reply to Defendant's Response (doc. #66) on April 7, 2015, which was followed by a Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction (doc. # 90) on May 1, 2015.

On April 1, 2015, Mr. Makeen filed his Verified Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #103) against Defendant City and County of Denver.  The City and County of Denver and State of Colorado filed separate responses (docs. #108 and 109, respectively) on June 22, 2015.  Plaintiff filed a Reply to Defendant City's Response (doc. #110) on June 30, 2015.

---

[1]With the filling of the Fifth Amended Complaint, Defendants Bravo ("Statewide ADA Coordinator") and Branham ("ADA Coordinator for the 18th Judicial District"), as well as Defendant Suzanne Razook ("Human Resources Director for the City and County of Denver"), are no longer named parties in this litigation.  The Arapahoe County Board of County Commissioners was dismissed from this action earlier.

This court held an evidentiary hearing in this case on May 5, 2015.  At that time, I determined that Mr. Makeen's original Verified Petition and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #24) was moot in light of the subsequently filed Corrected Verified Petition and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #60).  This court has carefully considered the voluminous briefing submitted by the parties and their attached exhibits, a transcript of the May 5, 2015 hearing, the entire court file and applicable case law.  For the following reasons, the court recommends that Mr. Makeen's motions for preliminary injunctive relief be denied.

## FACTUAL BACKGROUND

Plaintiff commenced this action on December 23, 2014, with the filing of a Complaint (doc. #1) that asserted violations of the Americans with Disabilities Act, 42 U.S.C. §§12102-12213, the Rehabilitation Act, 29 U.S.C. § 794, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, as well as state law contract and tort claims.  The Complaint generally alleged that these violations stemmed from Defendants' failure to "provide services to Mr. Makeen so he could access the court and participate fully in all hearings after being approved for services."  *See* Complaint, at 1.  Mr. Makeen asserted claims against the State of Colorado, Janel Bravo in her official and individual capacities, Charla Branham in her official capacity, and the Arapahoe County Board of County Commissioners.

More recently, the court granted Mr. Makeen's Fifth Motion for Leave to Amend Complaint (doc. #114).  Plaintiff's Fifth Amended Complaint is directed only against the State of Colorado and Denver City and County.  This pleading alleges that Mr. Makeen was denied

3

access to state courts and was prevented from participating equally in all hearings in those courts after being denied a qualified or appropriate note taker as an accommodation for his disabilities. The specific state court actions cited in the Fifth Amended Complaint are:  (1) *Rufner v. Makeen*, 2014CV31886 (Arapahoe County District Court); (2) *Makeen v. Hailey*, 2014CV253 (Arapahoe County District Court); (3) *Makeen v. Hopf*, 15C00003 (County Court for the City and County of Denver); (4) *Makeen v. Anthony*, 12C00787 (County Court for the City and County of Denver); and (5) *Woodstream Falls v. Makeen*, 15CV030561 (Denver District Court).  More specifically, Mr. Makeen brings claims under Title II of the ADA, the Rehabilitation Act, various constitutional amendments, and the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-801, *et seq*.  The Fifth Amended Complaint also asserts claims for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, unjust enrichment, fraudulent misrepresentation, and intentional infliction of emotional distress.  Mr. Makeen requests, *inter alia,* declaratory relief, preliminary and permanent injunctive relief,[2] compensatory damages, punitive damages, "reimbursement for all costs including attorney fees/note taker fees for the cost of Ms. Leta Holden," and an order reinstating all of his state court cases.

---

[2]The Prayer for Relief in the Fifth Amended Complaint requests, *inter alia*, that Defendants be "[p]reliminarily and permanently enjoin[ed] . . . to provide Plaintiff with accommodations under Title II of the ADA and Section 504 of the Rehabilitation Act, Colo. Rev. Stat. § 24-34-801 and C.R.S. § 13-90-201."  In addition, Mr. Makeen seeks:

> [a]n injunction requiring Defendants to comply with the Eighth Amendment and the Due Process Clause of the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act; [and]

> [i]njunctive relief as the court seeks fit to remedy [D]efendants' past unlawful conduct and to prevent future unlawful conduct by [D]efendants.

On February 2, 2015, Mr. Makeen filed a Request for Accommodation under Americans with Disabilities Act Pursuant [to] D.C.COLO.LCivR 83.3 (doc. #23).  This three-page motion asserted, without supporting documentation, that Mr. Makeen "has been a qualified individual with a disability and is need of a (auxiliary aids-note taker)" for purposes of the status conference set on this court's calendar for March 17, 2015.  Plaintiff claimed that "[o]ne of [his] disabilities is auditory processing deficits which influence his reading skills, his spelling skills, his ability to communicate, and more importantly, his ability to get the signal value of what is spoke to him."  Mr. Makeen asserted that a note-taker enables him "to be able to effectively communicate and understand."  Accordingly, Mr. Makeen asked this court "to appoint Ms. Leta Holden as [his] (auxiliary aids-note taker)" at her hourly rate of $300.00.[3]

This court granted, in part, Mr. Makeen's Request for Accommodation with an Order (doc. #27), dated February 19, 2015.  After noting The Judicial Conference Guidelines for Services to the Hearing Impaired and Other Persons with Communications Disabilities, I ordered that Mr. Makeen should be provided with a computer-assisted real-time (CART) court reporter at the March 17, 2015 status conference and that he also should be mailed a "copy of the courtroom minutes, which summarize the content of the hearing, including any established deadlines and orders, as well as instructions on how to order, at his own expense, an official court transcript."  I denied Mr. Makeen's request to the extent it sought "court authorization for Ms. Holden to serve

---

[3]The Clerk's Office indicates that Ms. Holden's status as a member of this District Court's bar has been reclassified as "admin removal" based upon her failure to pay a 2013 bar assessment fee.  It also appears that on August 24, 2015, Ms. Holden's license to practice law in the State of Colorado was suspended for a year and one day, but the effect of that order was stayed upon the completion of a two-year period of probation.  *See People v. Leta R. Holden*, 15PDJ073, August 24, 2015.

as a note-taker."[4]

The status conference on March 17, 2015 lasted 63 minutes.  During the conference, the court discussed Mr. Makeen's request for preliminary injunctive relief, pointing out that the motion did not address specifically the required elements for injunctive relief under Fed. R. Civ. P. 65.  Mr. Makeen indicated that he could cure this potential shortcoming in a supplemental submission that he would file in 24 hours.[5]  During the March 17, 2015 status conference, Mr. Makeen did not use the CART system available to him and did not have the services of a "note taker" at counsel's table.  Although the court acknowledged Mr. Makeen's "marvelous job" of responding to questions posed from the bench without the assistance of a note taker,  Mr. Makeen explained that a "qualified note taker" is "somebody that – as a matter of fact, they have to know the subject matter."

> The City and County of Denver provided me with a note taker that basically is somebody that writes down what is being said.  They cannot interpret what's being said because a qualified note taker is somebody that can actually comprehend what's going on within legal proceedings, to be able to break it down into layman's terms so that I can understand it, also to be able to get it correct because she could not get it correct. . . . What I need help with is somebody who can do the note taking with – into a process to where I can understand what they are saying because there is some things which [the court] said that I have only got the benefit of it because you have basically said things three or four times over. . .

---

[4]Mr. Makeen filed an Objection (doc. #29) to my Order of February 19, 2015, stating that in the past, his use of CART had caused Mr. Makeen's auditory process "to over load," resulting in seizures.  Plaintiff asked the court to "give primary consideration to Mr. Makeen's choice of note taker of Ms. Leta Holden."  Plaintiff's Objection noted that while Ms. Holden is an attorney, "she does not give legal advise (sic.) to Mr. Makeen."  The district judge denied Mr. Makeen's objection in an Order Affirming United States Magistrate Judge Order (doc. #38).  Judge Arguello specifically found "that a $300.00 per hour note taker is unreasonable and that [CART] is a reasonable accommodation for Plaintiff's communication disability."

[5]Mr. Makeen's 19-page Supplemental Brief in Support of Plaintiff's Verified Petition and Application (doc. #51), along with five attached exhibits, was filed on March 18, 2015.

. So therefore, a qualified note taker, someone that's in law that is going to get it correct, that is not going to give me the bullet points, all right, that's basically going to say, well, this, this, this and this, and to where I can take it in.

*See* Transcript of Proceedings on March 17, 2015, at 28-30.  Mr. Makeen prefers that Ms. Holden serve as his note taker because "from working with her for so many years, I can follow her notes . . . because she knows the subject matter." *Id.* at 31.

The court held an evidentiary hearing on the pending motions for injunctive relief on May 5, 2015.  Ms. Leta Holden sat with Mr. Makeen at counsel's table throughout the hearing, and at various times appeared to be writing on a pad of paper.  At the outset of that hearing, I asked Mr. Makeen to update the court on the status of his various state court actions.  Plaintiff advised that a final judgment had been entered in *Makeen v. Hopf.*[6]  Mr. Makeen stated that proceedings in *Ruffner v. Makeen* were still pending after the Colorado Supreme Court issued its mandate returning the case to Arapahoe County District Court.[7]  As of May 5, 2015, proceedings in *Makeen v. Hailey* remained stayed while the parties awaited a ruling by the Colorado Court of Appeals in a related case.  Mr. Makeen said that there were no current setting in *Makeen v. Anthony.*  Finally, in *Woodstream Falls v. Makeen*, a trial date had been set for October 16, 2015, but nothing else had been scheduled.

On May 5, 2015, this court also asked Mr. Makeen to more precisely state the

_____

[6]During the evidentiary hearing, Mr. Makeen also alluded to a motion he filed in the *Hopf* case entitled "Plaintiff's Motion to Vacate Judgment Attained in Violation of the ADA."  *See* Transcript of Proceedings on May 5, 2015 (doc. #122), at 55.  Mr. Makeen did not elaborate on the nature of that motion.

[7]Mr. Makeen explained that he had petitioned the Colorado Court of Appeals and then the Colorado Supreme Court to address the issue of improper service of the summon and complaint in that case.  Mr. Makeen acknowledged that he had not sought appellate review concerning his  request for accommodation.

7

preliminary injunctive relief sought in the pending Rule 65 motions. Plaintiff stated that "[b]asically, what I'm asking the court is to please direct the State of Colorado and the City and County of Denver to provide me with either Ms. Holden, Ms. Leta Holden, or a qualified note taker to be with me in any and all court proceedings within – any and all court proceedings within the State of Colorado." *See* Transcript of Proceedings on May 5, 2015 (doc. #122), at 14.

In moving for preliminary injunctive relief, Mr. Makeen contends that the Defendants have violated his rights and continue to violate his rights in the above-referenced state court actions. According to Mr. Makeen, on October 24, 2014 the Arapahoe County District Court in *Rufner v. Makeen* approved his request for a note taker and permitted Ms. Holden to sit at counsel table. On November 12, 2014, Mr. Makeen was told that his "request for a note taker under the ADA was approved you can have your wife sit at the table with you." *See* Plaintiff's Memorandum of Points and Authorities (doc. #90), at 9. On November 17, 2014, "Ms. Bravo, State ADA coordinator sent Mr. Makeen a email stating that Ms. Holden was approved as his note taker at $8.00 an hour." *Id.* at 10. Mr. Makeen claims that on November 19, 2014, "no note taker appeared" for the scheduled hearing.

In his second case, *Makeen v. Hailey*, Plaintiff states that his request for a note taker was approved, but when he arrived for a hearing on December 30, 2014, he was provided with CART, even though the appropriate authorities were aware that equipment could cause him to have seizures. *Id.* at 11.

Mr. Makeen claims that in *Makeen v. Hopf*, he requested the services of a note taker on January 16, 2015 for a hearing scheduled on January 27, 2015 in County Court for the City and County of Denver. According to Mr. Makeen, Suzanne Razook initially offered to provide

8

CART, but later on January 21, 2014 indicated that "the City and County of Denver was willing to pay Ms. Holden $25.00 an hour for her services" as a note taker.  Ms. Rezook stated that if Ms. Holden insisted on a higher hourly rate, the City and County could then only offer CART. *Id.* at 13.  Mr. Makeen declined to use CART and asked for another note taker.  On January 23, 2015, Ms. Razook informed Mr. Makeen that she had found an alternative note taker who would be available at the January 27, 2015 hearing.  Mr. Makeen contends that the assigned note taker, Ms. Barbi Frias, did not perform to his satisfaction, because she wrote down "'word for word' what [was] being said" and "most of what she wrote was inaccurate." *Id.* at 13.  On February 25, 2015, the trial judge dismissed the complaint in *Makeen v. Hopf.*

In his fourth case, *Makeen v. Anthony*, Plaintiff claims that he requested the assistance of a note taker for a hearing scheduled for April 23, 2015.  Ms. Frias again was assigned, even though Mr. Makeen had previously complained that she was incompetent, that he could not understand her notes and those notes were inaccurate.  Moreover, Mr. Makeen claims that "at no time" did Ms. Frias ask "how he would like her to present her notes."  For this hearing, Ms. Frias took her notes using an electronic tablet which Mr. Makeen claims prevented him "from reviewing the notes during the hearing to completely understand what was going on because he could not see what she was typing." *Id.* at 15.

Finally, in his fifth case, *Woodstream Falls v. Makeen*, the Plaintiff insists that he asked for the services of a note taker.  Although that request was approved, Mr. Makeen was told that the assigned note taker "will not interpret what she thinks she heard, but rather capture the speakers' words as closely as possible rather than trying to summarize." *Id.*  Mr. Makeen also asserts that the note taker assigned to an April 23, 2015 hearing was "incompetent" because "she

wrote on purple paper, thus making it unreadable during the hearing." Plaintiff further claims that the assigned "note taker refused to tell Mr. Makeen what other cases she had provided noting taking services." *Id.* at 17.

During the evidentiary hearing on May 5, 2015, Mr. Makeen called as a witness, Kelly Boe, who is the District Administrator for the Denver District and Juvenile Court in the Second Judicial District. Ms. Boe explained that she is employed by the State of Colorado and is responsible for "taking care of the business end of the court." See Transcript of Proceedings on May 5, 2015, at 21. Ms. Boe testified that on October 31, 2014, she sent an email to Leta Holden in response to a invoice Ms. Holden had submitted in "case 14CV356" requesting payment for "interpreting services" at the rate of $300.00 hour. Apparently, the trial judge had approved the request for Ms. Holden's services in that case and directed that Ms. Holden would be acting in the role of an interpreter. *Id.* at 28. Ms. Boe testified that the authorized compensation rate for an uncertified interpreter was $35.00 per hour as set forth in Chief Justice Directive 0603. *Id.* at 28. After advising Ms. Holden that she would be required to complete a W-9 to receive compensation "as a vendor in the state accounts payable system," *see* Plaintiff's Exhibit 1, Ms. Boe never heard back from Ms. Holden. Ms. Boe also stated that during the three and a half years she has served as the District Administrator for the Denver District and Juvenile Court, she has never received a request for a note taker and was not aware of a "job description within the [judicial] branch for a note taker" or an established compensation rate for a note taker. *Id.* at 29-30.

Defendants offered at the evidentiary hearing the testimony of Ms. Cheri Davis, who is the Legal Auxiliary Service Manager at the Colorado Commission for the Deaf and Hard of

Hearing.  Ms. Davis testified that she provides "the sign language interpreters and CART providers for the state courts." *Id.* at 39.  A sign language interpreter assigned to assist in a court case is paid between $53.00 and $60.00 per hour.  Ms. Davis recalled that she received an inquiry from Mr. Makeen asking about note-taking services that the Commission might provide.  Ms. Davis explained to Mr. Makeen that she did not know of any note takers and she was not aware of any certification for note takers.  *Id.* at 41.  Mr. Makeen later contacted Ms. Davis and advised her that he had gone to a court proceeding with a note taker, but that the court in that case would not compensate his note taker.  Ms. Davis told Mr. Makeen that any further inquiries should be directed to Kelly Boe at the Second Judicial District.  *Id.* at 42.  Ms. Davis also testified that during the eight years that she has been employed by the Commission for the Deaf and Hard of Hearing, she has never received a request for a note taker, but that when a court approves a request for a sign language interpreter or CART, payment for those services is processed and made by the Commission, not the specific court that approves the request.  *Id.* at 46.

Defendants also called Ms. Rezook to testify.  Ms. Rezook, for the past nine years, has been the Director of Human Resources and ADA Coordinator for the Denver County Court.  *Id.* at 48.  Ms. Rezook explained that in January 2015, she received a request from Mr. Makeen for a note taker.[8]  Ms. Rezook responded that she had never received a request for a note taker's services and asked if Mr. Makeen had someone in mind.  Plaintiff responded that he had a note

---

[8]Ms. Rezook also testified that when she receives a request for accommodation under the ADA, she does not question whether the requester is actually disabled or the basis for the requested accommodation.  Ms. Rezook explained that "[t]he first thing I do is find what it is the person needs, and how I can accommodate them.  And then I accommodate them."  *See* Transcript of Proceedings on May 5, 2015, at 49 and 50.

taker, Ms. Holden.  Ms. Rezook offered Holden $25.00 per hour.  *Id.* at 59.  When Mr. Makeen did not respond to that proposal, Ms. Rezook offered to provide CART, but was told that equipment would not be appropriate for Mr. Makeen.  *Id.* at 52.  Ms. Rezook then tried to find a note taker "by contacting university and contacting law schools" and "the disability people at all of those different universities trying to find someone that could be a note taker for" Mr. Makeen.  *Id.*  Based on those inquiries, Ms. Rezook was contacted by Barbi Frias, who subsequently served as Mr. Makeen's note taker.  Ms. Rezook testified that Mr. Makeen never complained to her about Ms. Frias's performance at any court hearing, *id.* at 54, and that Mr. Makeen never specified what he expected from a note taker.  Ms. Rezook simply told Ms. Frias that she "was to take notes for [Mr. Makeen] in the courtroom."  *Id.* at 62.

Finally, Defendants called Ms. Frias as a witness.  Ms. Frias explained that she is currently employed by the Sisters of Charity of Leavenworth Health Systems as an aide in the legal department.  *Id*. at 65-66.  On May 5, 2015, Ms. Frias was attending Arapahoe Community College and taking classes in the field of paralegal studies.  Ms. Frias' employment history includes working as a para-educator assisting youth with cognitive disabilities, and in that capacity she occasionally provided note-taking assistance.  *Id.* at 67.  Also, as part of her paralegal training, Ms. Frias had been required to observe court proceedings and take notes. *Id.* at 78.

Ms. Frias answered the County Court's solicitation for a note taker and provided Ms. Rezook with her resume.  After she was assigned to assist Mr. Makeen, she spoke with him by telephone briefly before the court hearing.  *Id*. at 68.  Ms. Frias claims that Mr. Makeen provided

little direction as to what he expected or how she should perform her note-taking duties.[9]  As Ms.

Frias testified:

> [T]hat first time it was difficult for me to figure out what the notes were for or
> how I should be taking them; what exactly they needed to be on; that his needs
> weren't clear to me. . . . It was difficult because I didn't understand why I was
> there.  And the – just before his first hearing, in speaking with Mr. Makeen, he
> gave me a list of different legal terms.  As a student, I know I cannot give legal
> advice or interpret the law, so I told him I wasn't able to give him these
> definitions.  He seemed pretty adamant.

*Id.* at 69.[10]

Ms. Frias testified that once Ms. Rezook explained to Mr. Makeen that Ms. Frias had not

been appointed to provide legal advice, Mr. Makeen "seemed mostly disinterested in my being

there" and "[t]here wasn't any direction given on what the notes were for."  *Id.* at 70.  Ms. Frias

---

[9]Ms. Frias' uncertainty or frustration with her assignment seems understandable in light
Mr. Makeen's own expectations.  As he explained on May 5, 2015:

> Everybody that I have talked to from state and county on does not have a clue of
> what a notetaker is.  They don't know what a notetaker is supposed to be doing.
> A notetaker does (sic.) not supposed to take word for word.  They're supposed to
> be able to understand, and by talking to me.

*See* Transcript of Proceedings on May 5, 2015, at 1221-22.  Mr. Makeen's expectations for a
note taker are strikingly at odds with the responsibilities of a sign-language interpreter or the
assistance that CART provides the hearing-impaired.  Both the sign-language interpreter and
CART provide a verbatim account with no expectation of editing or analysis.  In contrast, Mr.
Makeen apparently expects a note taker to understand the substance or significance of what is
being said in the courtroom, to note the particular information that Mr. Makeen might find most
helpful, and to convey that information in a manner that Mr. Makeen can most effectively
assimilate during the court proceeding.

[10]In cross-examining Ms. Frias, Plaintiff conceded that he had given her "a sheet with
terms on it," such as "CRS" and "CRCP."  *See* Transcript of Proceedings on May 5, 2015, at 74.
Mr. Makeen said he asked for those definitions to get a better of understanding of Ms. Frias'
"general education and background" because "well, you can't write notes if you don't – if you
don't understand something."  *Id.* at 75.  Indeed, during the evidentiary hearing on May 5, Mr.
Makeen asked Ms. Frias to explain "what lack of foundation means."  *Id.*

also volunteered that "[a]fter witnessing Mr. Makeen represent himself, he seemed more than competent.  He didn't at all seem to have an auditory issue."  *Id.* at 71.  In response to Mr. Makeen's cross-examination, Ms. Frias explained that at the first hearing, she "tried to put down as much as I could."  *Id.* at 77.  But Ms. Frias also had the impression that Mr. Makeen was not utilizing her notes or looking at her notes at either hearing she attended.[11]  *Id.* at 79.

At the second hearing for which she served as Mr. Makeen's note taker, Ms. Frias used a electronic tablet, in lieu of a pen and paper.  Ms. Frias testified that Mr. Makeen did not object to the tablet or ask her to take her notes on paper.  *Id.* at 74.  Ms. Frias explained that after the hearing, she "asked Mr. Makeen if he would prefer the notes be sent in Word or PDF format.  He said PDF was fine.  So, I e-mailed those, and that was it."  *Id.* at 74.

In response to the court's questions, Ms. Frias testified that she saw Ms. Holden at the first hearing Ms. Frias attended as Mr. Makeen's note taker.  According to Ms. Frias,

> When I first met Mr. Makeen it was in the courthouse in the hallway, and she was sitting with him then.  And then they were meeting at a back table within the courtroom, and then throughout the hearing she sat where anybody else would sit, and then afterwards they left together."

*Id.* at 80.

---

[11]Ms. Frias' impressions are consistent with this court's own observations.  Ms. Holden sat at counsel's table with Mr. Makeen during the May 5, 2015 hearing.  As I noted on the record at the conclusion of the hearing,

> I've sat here and watched Ms. Holden write stuff down.  I've seen you glance down at the paper occasionally. She has not written . . . there are times when she has not written a word.  So, it appears that she's not doing a word-for-word, verbatim account.

Mr. Makeen conceded that the court's observations were accurate.  *See* Transcript of Proceedings on May 5, 2015, at 121.

# ANALYSIS

Plaintiff insists that he is likely to succeed on the merits of his claim under Title II of the ADA, given that he "is a qualified individual under the ADA" and that Defendants have "repeatedly refused to provide [him] with a qualified (auxiliary aids-note taker) which he repeatedly requested."  See Plaintiff's Corrected Verified Petition and Application (doc. #6), at 2-3.  Mr. Makeen further asserts that without preliminary injunctive relief he will "be denied access to the court and equal protection as he won't be able to effectively communicate equally as others to be heard."  *See* Plaintiff's Memorandum of Points and Authorities (doc. #90), at 5.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp*., 269 F.3d 1149, 1154 (10th Cir. 2001)).  A moving party must meet four prerequisites for preliminary injunctive relief:  (1) demonstrate a substantial likelihood that it will eventually prevail on the merits; (2) show that it will suffer irreparable injury unless injunctive relief is provided; (3) offer proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) show that the injunction, if issued, would not be adverse to the public interest.  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).  *See also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  A plaintiff that fails to satisfy each of these four factors has not sustained his or her burden under Rule 65 which renders the request for

injunctive relief unwarranted. *Village of Logan v. United States Department of Interior*, 577 Fed. Appx. 760, 766 (10th Cir. 2014) (noting that a "preliminary injunction is 'never awarded as of right'").

The Tenth Circuit recognizes three types of disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions that require a party to take some affirmative act rather than refrain from some act; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). A disfavored injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. University of Colorado,* 427 F.3d 1253, 1259 (10th Cir. 2005). Where the requested relief implicates one of the disfavored injunctions, the movant must make "strong showings of the likelihood of success on the merits and the balance of the harms." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). *See also Salt Lake Tribute Publishing Co. v. AT&T Corp.*, 320 F.3d 1081, 1099 (10th Cir. 2003) (where a preliminary injunction will change the status quo, "the movant has an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction can be issued"). I find that Mr. Makeen's motions seek "disfavored" injunctive relief and, therefore, are subject to "close scrutiny."

For purposes of applying Rule 65, "the status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Dominion Video Satellite, Inc.*, 269 F.3d at 1155 (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096,

1100 n.8 (10th Cir. 1991)).  "In determining the status quo for preliminary injunction, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."  *Schrier*, 427 F.3d at 1260 (quoting *O Centro*, 389 F.3d at 979).  *Cf. RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (because "the primary goal of a preliminary injunction is to preserve the pre-trial status quo," a court "should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action - a mandatory preliminary injunction - before a trial on the merits occurs").  An injunction is considered mandatory in nature "if the requested relief 'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'"  *Schrier,* 427 F.3d at 1261.  *See also Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1243-45 (D. Colo. 2007)

Here, Mr. Makeen seeks an order requiring the Defendants to appoint Ms. Holden as his "note taker at all court proceedings"[12] and to compensate her at the hourly rate of $300.00.  Alternatively, Plaintiff has moved for an order requiring the Defendant City and County of Denver "to retain a competent attorney or other competent person" to serve as Mr. Makeen's note taker.  In short, the pending motions do not seek to maintain the status quo and cannot be

---

[12]Plaintiff's requested equitable relief is not limited to his pending state cases and arguably would extend to any future lawsuits in which he might appear as a plaintiff or defendant.  *But see ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir. 2011) ("It is well settled [that] an injunction must be narrowly tailored to remedy the harm shown.") (quoting *Garrison v. Baker Hughes Oilfield Operations, Inc*., 287 F.3d 955, 962 (10th Cir. 2002)).  *Cf. Pollgreen v. Morris*, 496 F. Supp. 1042, 1058 (S.D. Fla. 1980) ("'[w]henever the extraordinary writ of injunction is granted, it should be tailored to (compel) no more than what is reasonably required to accomplish its ends'").

considered prohibitory.

This court also acknowledges that Rule 65 requires that an order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." *See* Fed. R. Civ. P. 65(d)(1)(B) and (C).

> That rule requires that an injunction be reasonably specific in identifying what acts are prohibited or required, both to give notice to the defendant of what is prohibited, and to guide an appellate court in reviewing the defendant's compliance or noncompliance with the injunction. An injunction "too vague to be understood" violates the rule, and generally, injunctions simply requiring the defendant to obey the law are too vague.

*Keyes v. School District No. 1, Denver, Colorado*, 895 F.2d 659, 668 (10th Cir. 1990) (quoting *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). Mr. Makeen's expectations and standards for a "competent" or "qualified" note taker are too subjective and amorphous to translate into an enforceable order under Rule 65, and would have the potential to mire this court in ongoing disputes between Mr. Makeen, his note taker, and state judicial officers. *Cf. Summum v. Pleasant Grove City*, 483 F.3d 1044, 1049 (10th Cir. 2007) (in affirming denial of the proposed preliminary injunction, noted that the requested relief would have affirmatively required the district court to supervise the city's actions to ensure it abided by the injunction), *rev'd on other grounds*, 555 U.S. 460 (2009).

Based upon the available record, I find that Plaintiff has not sustained his heightened burden of establishing all of the required factors for injunctive relief. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (citation omitted). Even "serious or substantial harm is not irreparable harm." *Id*. Where a plaintiff alleges a constitutional violation, a court may presume that a resulting injury is

irreparable to the extent that it cannot be redressed by post-trial relief.[13]  *Pinson v. Pacheco*, 397 Fed. Appx. 488, 491-92 (10th Cir. 2010).  However, even in the case of an alleged constitutional violation, the alleged injury must be imminent, and more than speculative, to warrant injunctive relief.  *Schrier*, 427 F.3d at 1267.  "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.*  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Id.*  While the moving party is not required to demonstrate the certainty of an injury occurring, a speculative injury or the mere possibility of harm will not suffice for the issuance of a preliminary injunction.  *Hills Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp.2d 1197, 1205-06 (D. Kan. 2003).

I find that Mr. Makeen has not come forward with sufficient facts to demonstrate that he will suffer irreparable harm unless the requested injunctive relief is provided.  The available record shows that Defendants have agreed to provide Mr. Makeen with a note taker. Mr. Makeen insists that Ms. Frias has not met his specific needs or expectations, and does not compare favorably to his preferred note taker, Ms. Holden.  I cannot discount the possibility that Mr. Makeen's frustrations stem, at least in part, from his belief that any note taker provided by Defendants must match Ms. Holden's abilities in all respects and should be expected to immediately grasp a method of courtroom interaction that Mr. Makeen and Ms. Holden have developed over several years.  Perhaps the harm that Mr. Makeen is claiming is partly the

---

[13]That presumption may not be applicable in this case, however, as Mr. Makeen concedes that in *Makeen v. Hopf* he moved to vacate the judgment based on an alleged violation of his rights under the ADA.  *See* Plaintiff's Memorandum of Points and Authorities (doc. #90), at 14.

product of his own impatience or inadequate communication with the provided note taker.  I am

not convinced, from the available record, that this "harm" is substantial or irreparable.

It is also incorrect to suggest that Defendants have deprived Mr. Makeen of Ms. Holden's

services as a note-taker.  Defendants have expressed their willingness to compensate Ms.

Holden, albeit at a rate substantially less than her preferred $300.00 per hour.  Defendants'

proposed compensation, coupled with Mr. Makeen's Prayer for Relief (which includes

"[r]eimbursement for all costs including attorney fees/note taker fees for the cost of Ms. Leta

Holden"), belie Plaintiff's claim of irreparable harm.[14]  Moreover, Ms. Holden's history of

assisting Mr. Makeen without invoking the ADA, as well as her willingness to participate in the

May 5, 2015 hearing without compensation from this District Court, refutes Plaintiff's claim of

imminent irreparable harm if he does not get relief under Rule 65.[15]

As previously noted, Mr. Makeen did not have the services of a note taker during the

status conference with this court on March 17, 2015.  Yet Mr. Makeen freely acknowledged that

he was fully able to understand and participate in those proceedings because I repeated my

comments and questions from the bench.  I am not prepared to presume that state judges would

be less inclined to provide the same degree of clarity, particularly if Mr. Makeen asked for

clarification during court proceedings.  Mr. Makeen also demonstrated the same competence

---

[14]As a practical matter, Mr. Makeen's requested injunctive relief would highly compensate Ms. Holden for her note taking skills while simultaneously relieving her of any of the financial risks that she might assume as counsel of record.  The advantages of such an arrangement are self-evident.

[15]For example, Mr. Makeen has acknowledged that Ms. Holden provided "drafting assistance" in connection with at least one motion he filed in *Makeen v. Hailey* on or about February 11, 2015.  *See* Exhibit 5 (doc. #66-5) in supported of Plaintiff's Reply to Defendant's Response to Plaintiff's Verified Petition and Application.

during the May 5, 2015 evidentiary hearing.  As I told Plaintiff on the record, "in the two

hearings that I've had, one with Ms. Holden [and] one without Ms. Holden, in both hearings you

have done a very successful, a very commendable job as a pro se litigant."  *See* Transcript of

Proceedings on May 5, 2015, at 108.

Because Mr. Makeen is seeking a disfavored type of preliminary injunction, it is not

enough that he raise serious or substantial questions going to the merits of his claims.  Rather,

Plaintiff must demonstrate a "substantial" likelihood of success on the merits and must carry this

burden by a "strong showing."  *AssociationVoice, Inc. v. AtHomeNet, Inc.*, No. 10-cv-00109-

CMA-MEH, 2011 WL 63508, at *5 (D. Colo. Jan. 6, 2011).  While Mr. Makeen's Fifth

Amended Complaint asserts several claims that raise factual and legal issues, the current record

presented by Plaintiff does not strongly demonstrate a substantial likelihood of success on the

merits.

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subject to discrimination by any such

entity."  *See* 42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides that

"[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance."  *See* 29

U.S.C. § 794(a).[16]  For those individuals with communication-related disabilities, public entities

---

[16]"The ADA applies only to public entities, whereas the Rehabilitation Act proscribes
discrimination in all federally-funded programs."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th
Cir. 2002).

are required to take "appropriate steps" and furnish "appropriate auxiliary aids"[17] to ensure that

the disabled individual "receive[s] effective communication that results in 'meaningful access' to

the public entity's services."  *See Bahl v. County of Ramsey*, 695 F.3d 778, 784 (8th Cir. 2012).

"Title II does not require States to employ any and all means to make judicial services accessible

to persons with disabilities. . . . It requires only "reasonable modifications' that would not

fundamentally alter the nature of the service provided . . . [or] impose an undue financial or

administrative burden[.]"  *Tennessee v. Lane,* 541 U.S. 509, 531-32 (2004).

Certainly, in determining what auxiliary aids are appropriate in a particular circumstance,

the public entity should "give primary consideration to the requests of the [individual] with

disabilities."  *See* 28 C.F.R. § 35.160(b)(2).  However, the public entity's obligation to make

"reasonable accommodation" does not mean that the entity must "provide a disabled individual

with every accommodation he requests or the accommodation of his choice."  *Dean v. University*

*at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 187 (2d Cir. 2015).  *See*

*also Gevarzes v. City of Port Orange, Florida*, No. 12-cv-1126-Orl-37DAB, 2013 WL 6231269,

at *2 (M.D. Fla. Dec. 2, 2013) (in a case where a deaf plaintiff alleged that the defendant City

had failed to reasonably accommodated his disability by providing an interpreter during his

arrest, the court observed that "[e]ffective communication does not require perfect

communication").  Title II of the ADA does not impose a strict liability standard on a public

---

[17]The definition of auxiliary aids specifically refers to "[q]ualified interpreters" and "note takers," as well as "other effective methods of making aurally delivered materials available to individuals with hearing impairments."  28 C.F.R. § 35.194(1).  While the foregoing definition refers to a "qualified interpreter," that same limitation does not apply to "note takers."  This court's own legal research has not identify a single reported judicial decision that discusses or even alludes to a "qualified note taker" in the context of an action brought under the ADA or the Rehabilitation Act.

entity simply because the disabled individual did not receive the precise auxiliary aid requested.

*Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 274 (D. Conn. 2013).

For Mr. Makeen to establish a violation of Title II of the ADA or § 504 of the

Rehabilitation Act:

> [H]e must establish: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in or denied the benefits of the [defendant's] services, programs or activities, or was otherwise discriminated against by the [defendant]; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability.  Under the ADA, a plaintiff must show that the discrimination was intentionally directed to him or her in particular,[18] and if this burden is met, the burden then shifts to the defendant to "show that the accommodation provided was either effective or that the accommodation sought and not provided would have resulted in a fundamental alteration of necessary procedures or an undue financial or administrative burden."

*Valanzuolo*, 972 F. Supp. 2d at 273 (internal citations omitted).[19]  Discrimination by reason of a

disability requires a showing that "but for" the plaintiff's disability, he would have been able to

access the services, programs or activities of the public entity. *Wisconsin Community Services v.*

*City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006).

Thus, Mr. Makeen's likelihood of success on the merits of his federal claims hinges, in

---

[18]Although proof of intentional discrimination is not an element of Mr. Makeen's prima facie case, he must prove intentional discrimination on the part of Defendants in order to recover compensatory damages.  *See, e.g., Nordwall v. PHC-Las Cruces, Inc.*, 960 F. Supp. 2d 1200, 1227 (D. N.M. 2013) (noting that intentional discrimination "does not require a showing of 'personal animosity or ill will," but instead "can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights").

[19]"Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge . . . and vice versa." *Cummings v. Norton*, 393 F.3d 1186, 1190 n.2 (10th Cir.2005).

large part, on the question of whether the Defendants provided "appropriate auxiliary aids."  As noted previously, this is a fact-specific inquiry that must address the totality of the circumstances in this case.  Fairly construed, the available record simply suggests a dispute as to the reasonableness of the accommodations provided by Defendants and whether those accommodations sufficed to provide Mr. Makeen with meaningful access to the state courts.  That factual/legal dispute is not appropriate for disposition in the context of a motion for preliminary injunction.  *Cf. Hibbert v. Bellmawr Park Mutual Housing Corp.*, 937 F. Supp. 2d 565, 575 (D. N.J. 2013) (noting that "[w]hat auxiliary aids would be required is a fact-sensitive issue that must be considered within the parameters of what is meant by 'effective communication'" and that "the effectiveness of auxiliary aids and/or services is [typically] a question of fact precluding summary judgment").  *See also Bravin v. Mount Sinai Medical Center*, 186 F.R.D. 293, 302 (S.D.N.Y. 1999) (noting that "[w]hat constitutes 'effective communication' is a question of fact").  More to the point, the present factual record does not clearly demonstrate that Mr. Makeen has a substantial likelihood of success on the merits.[20]

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Plaintiff Makeen's Corrected Verified Petition and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #60) and his Verified Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (doc. #103) be denied.

---

[20]Given Plaintiff's failure to satisfy two of the essential elements for preliminary injunctive relief, this court has need to balance the competing interests of Mr. Makeen, the Defendants, and the public.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 18th day of December, 2015.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge